**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TEHUM CARE SERVICES, INC.,[1] | ) | Case No. 23-90086 (CML) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
| TEHUM CARE SERVICES, INC., | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Adv. Pro. No. 23-_____ |
|  | ) |  |
| THOSE PARTIES LISTED IN APPENDIX A, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**COMPLAINT SEEKING (I)(A) A DECLARATORY JUDGMENT THAT
THE AUTOMATIC STAY APPLIES TO CERTAIN CLAIMS AND CAUSES
OF ACTION ASSERTED AGAINST CERTAIN NON-DEBTORS AND (B) AN
EXTENSION OF THE AUTOMATIC STAY TO CERTAIN NON-DEBTORS, OR IN THE
ALTERNATIVE, (II) A PRELIMINARY INJUNCTION RELATED TO SUCH ACTIONS**

Tehum Care Services, Inc., a Texas corporation and the above-captioned debtor and debtor in possession (the "Debtor," or "Tehum), for its Complaint against the parties listed on **Appendix A** to this Complaint (collectively, the "Defendants" or the "Claimants"), alleges as follows:

**Brief Statement of the Case**

1.      Through its chapter 11 case, the Debtor aims to maximize the value of its estate and propose a chapter 11 plan that, to the best of the Debtor's ability, provides meaningful recoveries

---

[1] The last four digits of the Debtor's federal tax identification number is 8853.  The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

for creditors and other stakeholders. *See* Perry Decl. ¶ 5. The relief sought through this adversary proceeding is critical to the Debtor's ability to achieve that purpose. *See id*. Without the requested declaration or injunction, the Defendants may be permitted to litigate claims (a) against non-Debtors that have been, or will be, asserted against the Debtor in its chapter 11 case or (b) that now belong to the Debtor's estate, in either or both cases thereby eroding the value of the Debtor's estate to the detriment of its creditor body as a whole. *See id*. Such actions will produce inequitable results, rewarding the winners in the proverbial "race to the courthouse" and disadvantaging all other creditors.

2.      Accordingly, the Debtor seeks the following:

A.  declarations that 11 U.S.C. § 362(a):

   i.   prohibits the commencement or continuation of any action by the Defendants to recover prepetition claims against YesCare Corp. and/or CHS TX, Inc. (collectively, the "Non-Debtor Affiliates") relating to liabilities allocated to the Debtor in the Divisional Merger (as defined below) (collectively, the "Allocated Claims"); and

   ii.  prohibits any act by the Defendants to assert fraudulent transfer, alter ego, veil piercing, successor liability,[2] or similar claims (collectively, the "POE Claims") against (a) the Non-Debtor Affiliates or (b) certain of the Debtor's current or former directors, officers, or certain medical providers, all as specified on **Appendix B** (collectively, the "Indemnified D&Os");[3] and

B.  an extension of the automatic stay under 11 U.S.C. § 105(a) and/or 362(a) to prohibit the commencement or continuation of any action by the Defendants against (i) the Non-Debtor Affiliates, (ii) the Indemnified D&Os, and/or (iii) third party former clients with contractual indemnification rights against the Debtor, specified on **Appendix B** (collectively, the "Indemnified Clients,"

---

[2] Texas law does not generally recognize successor liability, unless one entity expressly assumes the liabilities of another. *See Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 233–34 (S.D. Tex. 2011); *Sitaram v. Aetna U.S. Healthcare of N. Tex., Inc.*, 152 S.W.3d 817, 828 (Tex. App.—Texarkana 2004); *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 139–40 (Tex. App.—Houston [1st Dist. 2000, pet. denied]). Even if such claim was viable under Texas law (which it is not), it should be treated like any other derivative claim because the underlying basis would be "generalized harm" just like an alter ego claim. *See generally, e.g.*, *In re Emoral Inc.*, 740 F.3d 875, 880–82 (3d Cir. 2014) (stating that "state law causes of action for successor liability, just as for alter ego and veil-piercing causes of action, are properly characterized as property of the bankruptcy estate" and citing cases).

[3] **Appendices A–E** were separately filed contemporaneously with this Complaint, and **Appendix A** is also attached to this Complaint.

4863-1031-2021

and together with the Non-Debtor Affiliates and the Indemnified D&Os, the "Non-Debtor Indemnified Parties"), asserting the claims and causes of action specified on **Appendix B** (collectively, the "Indemnified Claims").

3.      In the alternative to the relief requested in paragraphs A. and B., the Debtor seeks a preliminary injunction under 11 U.S.C. § 105(a) and rule 7065 of the Federal Rules of Bankruptcy Procedure to enjoin the Defendants' prosecution of the Allocated Claims, POE Claims, and Indemnified Claims (collectively, the "Claims") against the Non-Debtor Indemnified Parties unless and until a chapter 11 plan is confirmed in this chapter 11 case, or this chapter 11 case is converted or dismissed.

4.      The relief requested in this adversary proceeding is necessary and appropriate for several reasons.  *First*, actions asserting Allocated Claims against the Non-Debtor Affiliates were stayed under 11 U.S.C. § 362(a)(1) upon commencement of this chapter 11 case.  As further described in the *Declaration of Russell A. Perry in Support of Debtor's Complaint for Declaratory and Injunctive Relief and Related Motion*, filed contemporaneously with this Complaint and incorporated herein by reference, in May 2022, the Debtor effectuated the Divisional Merger (as defined below) pursuant to the Texas Business Organizations Code.  In the Divisional Merger, (among other things) assets and liabilities were allocated between CHS TX, Inc. ("CHS") and the Debtor.  *See* Perry Decl. ¶ 8.  The Debtor was allocated all inactive and expired customer contracts, as well as all liabilities related to such contracts.  *See id.*  The Allocated Claims are liabilities that were allocated to the Debtor in the Divisional Merger but have been inappropriately asserted by various plaintiffs against the Non-Debtor Indemnified Parties.  *See id*  Since the Debtor is exclusively responsible for the Allocated Claims, the pursuit of Allocated Claims against the Non-Debtor Affiliates equates to an attempt to liquidate a prepetition claim against the Debtor outside of this Court.

4863-1031-2021

5.      *Second*, following the commencement of this chapter 11 case, each of the POE Claims, which are based on alter ego, veil piercing, successor liability, fraudulent transfer, and/or similar theories, *see id.* ¶ 23, became property of the Debtor's estate under 11 U.S.C. § 541(a). When claims against a non-debtor are property of the estate, only the debtor has standing to pursue them and the pursuit of such claims by a non-debtor is a violation of Bankruptcy Code section 362(a)(3). *See S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1150 (5th Cir. 1987); *Schertz-Cibolo—Universal City, Indep. Sch. Dist. (In re Educators Grp. Health Tr.)*, 25 F.3d 1281, 1284 (5th Cir. 1994). This is true even if outside the bankruptcy proceeding, a non-debtor was otherwise entitled to assert such claims. *See The Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 261 (5th Cir. 2010). Thus, any attempts by third parties to assert POE Claims were automatically stayed by section 362(a)(3) on the Petition Date (as defined below) and Defendants were automatically divested of standing to pursue such claims.

6.      *Third*, 11 U.S.C. § 362(a)(1) and/or (a)(3) should be extended to enjoin the Defendants' assertion of Indemnified Claims against the Non-Debtor Indemnified Parties because all of the Non-Debtor Indemnified Parties have indemnification rights against the Debtor pursuant to one or more of the following: (a) the Plan of Divisional Merger (as defined below) (Non-Debtor Affiliates and certain Indemnified D&Os); (b) the Debtor's corporate bylaws (certain Indemnified D&Os); or (c) contracts between the Debtor and a specific Indemnified D&O or Indemnified Client. *See* Perry Decl. ¶ 9. The Debtor and the Non-Debtor Indemnified Parties thus share an identity of interest due to these indemnification rights such that allowing the Indemnified Claims to proceed against the Non-Debtor Indemnified Parties has the same effect as to the Debtor as disregarding the automatic stay altogether. Indeed, any judgment rendered against a Non-Debtor

Indemnified Party in relation to an Indemnified Claim would result in a claim filed against the Debtor in its chapter 11 case. *See id*.

7.    *Last*, in the event this Court does not find that the automatic stay applies, or should be extended to apply, to the Claims against the Non-Debtor Indemnified Parties, a preliminary injunction is warranted to enjoin the prosecution of the Claims through the earlier of confirmation of a chapter 11 plan or conversion or dismissal of the Debtor's chapter 11 case. The continued prosecution of the Claims against the Non-Debtor Indemnified Parties will cause irreparable harm to the Debtor and its stakeholders, generally, by eroding the value of its estate though direct and indirect litigation costs and indemnification claims, impairing the Debtor's ability to confirm a chapter 11 plan, and ultimately negating the Debtor's entire purpose for filing for bankruptcy protection. *See id*. ¶ 10.

8.    The relief requested in this adversary proceeding will afford the Debtor the ability to pursue estate causes of action for the benefit of all creditors, maximize the value of its estate, and, to the best of its ability, provide a meaningful and equitable recovery to its creditors through a chapter 11 plan. *See id*. ¶ 11.

## The Parties

9.    The Plaintiff is the above-captioned debtor and debtor in possession. The Debtor is a corporation organized under the laws of Texas.

10.    Each named Defendant in **Appendix A** is a plaintiff in a pending lawsuit against the Debtor and/or one or more of the Non-Debtor Indemnified Parties to recover on account of POE Claims, Allocated Claims, or Indemnified Claims.

**Jurisdiction and Venue**

11.     This Court has jurisdiction over this adversary proceeding and the claims asserted herein pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  This adversary proceeding arises in and relates to the Debtor's case pending before this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

12.     The Debtor confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), to the entry of a final order or judgment by this Court if it is determined that this Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

13.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14.     The bases for the relief requested herein are Bankruptcy Code sections 105(a) and 362, and Bankruptcy Rules 7001, 7003, and 7065.

**Factual and Procedural Background**

**A.     History of the Debtor and the Divisional Merger**

15.     Until May 5, 2022, the Debtor (then named Corizon Health, Inc.) was a nationwide provider of correctional healthcare, providing services in multiple states across the United States.  *See* Perry Decl. ¶ 12.  In the ordinary course of its business, the Debtor entered into agreements with various (typically governmental) entities under which the Debtor would provide, or arrange for the provision of, healthcare services to certain inmates or detainees of the contract counterparty.  *See id*.  These counterparties typically required the Debtor to agree to broad indemnification obligations.  *See id*.  Each indemnification provision is substantially similar, albeit with slight variations.  *See id*.; **Appendix C**.  One exemplar provision is as follows:

10.3   <u>Indemnity</u>.   Corizon agrees to indemnify and hold harmless, pay the cost of defense, including reasonable attorney's fees, and save the Sheriff, her officers, appointees, agents, and employees from any claim, action, lawsuit, loss, damage, cost, charge, judgments, liabilities, or expense of any kind whatsoever arising out of any act, action, neglect, omission and/or failure to act by Corizon, including but not limited to, any claims, amounts or injuries covered under the Workers' Compensation laws, except as a third party claim outside Workers' Compensation, resulting or arising from Corizon's obligations and duties under this Agreement, except that neither Corizon nor any of its subcontractors shall be liable for any injury or damage caused by or resulting from the sole or partial negligence of the Sheriff, her officers, agents, and/or employees.

16.    By the end of 2021, the Debtor's financial situation was dire. *See* Perry Decl. at ¶ 13.   Its financial position had worsened in recent years due to revenue declines, margin compression, and deteriorating liquidity; it was operating in a significant negative working capital position due to its debt obligations; and it faced increased exposure to professional liability and other claims (indeed, several hundred), to the tune of an estimated $88 million.  *See id*. In the majority of the lawsuits asserting such claims, parties to whom the Debtor owes indemnification obligations were sued along with the Debtor.  *See id*.

17.    In May 2022, given the Debtor's financial position and hoping to stave off a bankruptcy filing, the Debtor effectuated a Divisional Merger (the "<u>Divisional Merger</u>") pursuant to the Texas Business Organizations Code by entering into that certain *Agreement and Plan of Divisional Merger*, dated May 1, 2022 (the "<u>Plan of Divisional Merger</u>").  *See* Perry Decl. ¶ 14. A Certificate of Merger was filed with the Texas Secretary of State on May 2, 2022.  *See id*.

18.    Under the Divisional Merger, the Debtor continued in existence and was allocated all inactive and expired customer contracts, as well as all liabilities related to such contracts. *See id*.¶ 15.  In return, the Debtor was released from nearly $100 million of senior secured debt obligations, which were then allocated to a new entity, CHS.  *See id*.  Moreover, as part of the Divisional Merger, the Debtor was allocated $1 million in cash, as well as the right to draw on the

$15 million Funding Agreement with M2 LoanCo, LLC, $11 million of which was earmarked for the Debtor's creditors. *See id.*

19.     As part of the Divisional Merger, CHS was allocated certain assets and other liabilities, including the debt obligation referenced above. *See id.* ¶ 16.  CHS was subsequently acquired by YesCare Corp. *See id.*  Under the Plan of Divisional Merger, the Debtor is obligated to "indemnify, defend, and hold harmless" CHS "from and against, and reimburse [CHS] for, any and all losses, damages, costs, expenses, taxes, liabilities, obligations, penalties, fines, claims of any kind (including reasonable attorneys' fees) (collectively, "<u>Losses</u>"), suffered or incurred, or that may be suffered or incurred, by [CHS] to the extent such Losses arise from or relate to" the assets or liabilities allocated to the Debtor in the Divisional Merger. *See id.*; **Appendix C**.

20.     Concurrently with the approval of the Divisional Merger, corporate bylaws were adopted (the "<u>Bylaws</u>") providing that the Debtor shall indemnify its current and former directors and officers under certain circumstances. *See* Perry Decl. ¶ 17; **Appendix C**.  The Bylaws state, in relevant part:

> The [Debtor] shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action or other proceeding (whether civil, criminal, administrative, arbitrative, or investigative). . .by reason of the fact that the person (1) is or was a director or officer of the [Debtor]; or (2) while a director of the [Debtor], is or was serving at the request of the [Debtor] as a partner, director, officer, venturer, proprietor, trustee, employee, administrator, or agent of another entity, organization, or an employee benefit plan. . .against all judgments (including arbitration awards), court costs, penalties, settlements, fines, excise, and other similar taxes and reasonable attorneys' fees. . . actually incurred by the covered person in connection with such proceeding. The right to indemnification in this Section [ ] shall continue as to a covered person who has ceased to be a director, officer, or delegate and shall inure to his or her heirs, executors, or administrators.

*See* **Appendix C**.

21.     The Debtor is no longer an operating entity with active contracts or medical service providers.  Although the Debtor had hoped to complete an out-of-court wind down of its business, the aforementioned ongoing litigation has made it impracticable for the Debtor to continue its out-of-court efforts while, at the same time, ensuring maximum recovery for creditors. *See* Perry Decl. ¶ 18.

22.     Accordingly, on February 13, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is operating as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in this chapter 11 case.  On March 2, 2023, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 77], as amended on March 3, 2023 [Docket No. 145] (the "Committee").

**B.      The Prepetition Lawsuits**

23.     As of the Petition Date, several hundred lawsuits against the Debtor were pending in multiple courts across the United States.  *See* Perry Decl. ¶ 19.  This Complaint affects only 37 of such lawsuits, each of which asserts one or more POE Claims, Allocated Claims, or Indemnified Claims.  *See id.*  **Appendix B** contains a summary of each lawsuit that is subject to this Complaint, along with the corresponding potentially affected Defendants, Claims, and Non-Debtor Indemnified Parties.

24.     Since the Petition Date, several Defendants have sought relief from the automatic stay in this Court or have filed pleadings in lawsuits outside of this Court, arguing that the automatic stay does not cover the Non-Debtor Indemnified Parties.  *See* Perry Decl. ¶ 20; *see, e.g.*, *Arther v. Corizon Health, Inc.*, No. 2:20-CV-0189, Docket No. 161 (D. Ariz. Mar. 13, 2023)

("Plaintiff requests that this Court find that the automatic stay applies only to the debtor, Defendant Corizon Health, Inc., that Plaintiff's 1983 claim may proceed against all remaining Defendants."). Certain of these pleadings, or pleadings filed earlier in the lawsuits, request the right to pursue claims challenging the effectiveness of the Divisional Merger and the existence of the Debtor's indemnification obligations.  *See* Perry Decl. ¶ 20; **Appendix B**; *see, also, e.g.*, *Hyman v. YesCare Corp.*, No. 3:22-cv-01081, Docket No. 1 (M.D. Tenn. Dec. 30, 2022) (requesting declarations, among other things, that "the divisional merger was invalid," and of alter ego).  Furthermore, the courts in which certain of the lawsuits are pending have ordered that the automatic stay does not apply to the Non-Debtor Indemnified Parties in the absence of an order from this Court providing otherwise.  *See* Perry Decl. ¶ 20; *see also, e.g.*, *Arther v. Corizon Health, Inc.*, No. 2:20-CV-0189, Docket No. 163 (D. Ariz. Mar. 13, 2023) ("Unless a motion to extend the stay as to the five-indemnified co-Defendants is filed with the bankruptcy court within two weeks . . . the Court will rule on the motion for summary judgment as to these five co-Defendants in due course."). Additionally, certain non-bankruptcy courts have requested briefing from the parties as to whether the stay applies to the Non-Debtor Indemnified Parties.  *See* Perry Decl. ¶ 20; *see also, e.g.*, *Hasty v. Corizon LLC et al.*, No. 2:22-cv-04054-SRB, Docket No. 83 (W.D. Mo. Feb. 23, 2023) (ordering that "Defendants shall SHOW CAUSE why this case should not proceed on Plaintiff's claims against them." (emphasis in original)); *Arther v. Corizon Health, Inc.*, No. 2:20-CV-0189, Docket No. 159 (D. Ariz. Mar. 13, 2023) ("While the automatic stay under Section 362 of the Bankruptcy Code is automatic as to Corizon, it is not clear this stay automatically extends to stay Plaintiff's claims against the remaining defendants. . . .The Court will therefore direct the parties to file a response reflecting their positions on the effect of the automatic bankruptcy stay as to the remainder of this action").

25.     Contemporaneously with the filing of this Complaint, the Debtor has filed a motion (the "Motion") seeking relief similar to the relief requested in this Complaint and setting forth additional grounds for the same.[4]

**COUNT I: Declaratory Judgment Pursuant to**
**28 U.S.C. § 2201(a) that 11 U.S.C. § 362(a)(1) and (a)(3)**
**Apply to Defendants Asserting Allocated Claims and POE Claims**

26.     The Debtor repeats and realleges the allegations in paragraphs 1–25 as though fully set forth herein.

27.     Section 362(a)(1) of the Bankruptcy Code prohibits the "commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). The continuation or commencement of Allocated Claims against the Non-Debtor Affiliates, which are unequivocally efforts to recover on claims against the Debtor, are automatically stayed. Each Allocated Claim inextricably relies upon the Debtor's alleged prepetition acts and the Debtor is exclusively responsible for the Allocated Claims. *See* Perry Decl. ¶ 22. Thus, the prosecution of the Allocated Claims against the Non-Debtor Affiliates can only have one purpose and effect: the ultimate liquidation and recovery of claims against the Debtor. Accordingly, the Allocated Claims are expressly enjoined by the automatic stay.

28.     Similarly, "[a]ny action to obtain possession of property from the estate or to exercise control over property of the estate" is automatically stayed under section 362(a)(3).

---

[4] On February 17, 2023, the Debtor filed its *Emergency Motion to Extend and Enforce the Automatic Stay* (the "Original Motion"). The relief requested herein and in the accompanying Motion is similar to the relief requested in the Original Motion. The Debtor fully incorporates the arguments and authority contained in the Original Motion and the Motion as if fully set forth herein.

11 U.S.C. § 362(a)(3).   The POE Claims consist of alter ego/veil piercing, successor liability, fraudulent transfer claims and/or similar claims.  *See* Perry Decl. at ¶ 23; **Appendix B**.  Each such claim is property of the Debtor's estate, is subject to the automatic stay, and is under the Debtor's exclusive control.   *See* 11 U.S.C. § 541(a); *In re S.I. Acquisition, Inc.*, 817 F.2d at 1150–53; *Schimmelpenninck v. Byrne* (*In re Schimmelpenninck*), 183 F.3d 347, 365–66 (5th Cir. 1999); *Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir. 1983); *In re Educators Grp. Health Tr.)* 25 F.3d at 1284–86; *In re Moore*, 608 F.3d at 261.

29.     Furthermore, 28 U.S.C. § 2201(a) provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  Courts possess jurisdiction to issue declaratory relief when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294–95 (5th Cir. 2019).

30.     There is a substantial controversy between the Debtor and the Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Without the resolution of this controversy, the Debtor expects that the Defendants will continue to assert the Allocated Claims and the POE Claims against the Non-Debtor Affiliates and/or the Indemnified D&Os.  *See* Perry Decl. ¶ 24.  Indeed, as previously mentioned, certain Defendants have taken the position that Allocated Claims and POE Claims against the Non-Debtor Affiliates and Indemnified

D&Os may continue, notwithstanding the Debtor's bankruptcy filing.  *See id.*; *see also, e.g.*, *Objection to Tehum Care Services, Inc.'s Emergency Motion to Extend and Enforce the Automatic Stay*, Main Case, Docket No. 88.  Continued prosecution of the Allocated Claims and the POE Claims against the Non-Debtor Affiliates and Indemnified D&Os will allow the liquidation of prepetition claims against the Debtor outside of this chapter 11 case, and otherwise permit non-Debtors to exercise control over property of the estate in contravention of the automatic stay.

31.     Accordingly, the relief requested in this Complaint is necessary and appropriate to protect the integrity of the automatic stay, and the Debtor's chapter 11 case and prevent the dissolution of the Debtor's estate to the detriment of the Debtor's creditors as a whole.

### COUNT II: Extension of the Automatic Stay Under
### 11 U.S.C. §§ 105(a) and 362(a) Against Defendants Asserting Indemnified Claims

32.     The Debtor repeats and realleges the allegations in paragraphs 1–31 as though fully set forth herein.

33.     Section 362(a) automatically stays, among other things, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title," and (b) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(1) and (a)(3).

34.     Section 105(a) provides that this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

35.     The Fifth Circuit Court of Appeals has recognized that the automatic stay should be extended when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party

defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986)); *Beran v. World Telemetry Inc.*, 747 F. Supp. 2d 719, 722–23 (S.D. Tex. 2010). A debtor's indemnification obligations warrant the extension of the automatic stay to the indemnified non-debtors. *See, e.g.*, *Nat'l Oilwell Varco, L.P. v. Mud King Prods., Inc.*, No. 4:12-3120, 2013 WL 1948766, at *5 (S.D. Tex. May 9, 2013); *Am. Honda Fin. Corp. v. Salyer*, No. 3:03-cv-651, 2007 WL 1158114, at *3 (S.D. Miss. Apr. 18, 2007); *In re W.R. Grace & Co.*, No. 01-01139, 2004 WL 954772, at *3 (Bankr. D. Del. Apr. 29, 2004); *In re Lomas Fin. Corp.*, 117 B.R. 64, 68 (S.D.N.Y. 1990).

36.    The Debtor and the Non-Debtor Indemnified Parties share such identity of interest that the continued prosecution of Indemnified Claims as to the Non-Debtor Indemnified Parties would be a *de facto* proceeding against the Debtor, in frustration of the purposes behind the automatic stay. Each of the Non-Debtor Indemnified Parties has contractual indemnity rights against the Debtor related to the Indemnified Claims. *See* Perry Decl. ¶ 26; **Appendices B & C**. While the Debtor has not yet fully concluded its analysis, based upon the analysis that has been completed to date there seems to be little ground to dispute the Debtor's indemnification obligations to the Non-Debtor Indemnified Parties related to the Indemnified Claims. *See* Perry Decl. at ¶ 26. Thus, absent any yet-to-be-discovered defenses to such indemnification obligations, the continued prosecution of or a judgment on Indemnified Claims against any Non-Debtor Indemnified Party would entitle such party to file a claim for indemnification against the Debtor in this chapter 11 case. *See id*. The Debtor's indemnity obligations would deplete its assets to the detriment of its creditor body as a whole. *See id*.

37.     Accordingly, the automatic stay should be extended to enjoin actions against the Non-Debtor Indemnified Parties related to Indemnified Claims.

### COUNT III: Preliminary Injunctive Relief
### Under Sections 105 and 362 of the Bankruptcy Code

38.     The Debtor repeats and realleges the allegations in paragraphs 1–37 as though fully set forth herein.

39.     Section 105(a) of the Bankruptcy Code permits the bankruptcy court to issue any order "necessary or appropriate" to assure the administration of the Debtor's bankruptcy estate, including issuing injunctions to enjoin actions against to non-debtors.  *See* 11 U.S.C. § 105(a); *Villarreal v. N.Y. Marine & Gen. Ins. Co. (In re OGA Charters, LLC)*, 554 B.R. 415, 424 (Bankr. S.D. Tex. 2016).  An injunction here is warranted to prohibit the Defendants from prosecuting Claims against the Non-Debtor Indemnified Parties while the Debtor is working to formulate and confirm a chapter 11 plan.

40.     When implementing a temporary injunction to stay actions against non-debtors, courts consider four factors:  (1) if the movant is "likely to succeed on the merits"; (2) if the movant is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) if the balance of equities tips in the movant's favor; and (4) whether granting the injunction "is in the public interest."  *In re OGA Charters, LLC*, 554 B.R. at 424 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

41.     Here, the Debtor meets each of the four requirements for a preliminary injunction. As to the first factor, for the reasons discussed above in Counts I and II (¶¶ 26–37), the Debtor is likely to demonstrate that the automatic stay already applies, or should be extended to apply, to the Claims pursuant to applicable law.  Furthermore, the Debtor's prospect for confirming a chapter 11 is strong, and an injunction will enhance the prospects of doing so.  *See* Perry Decl. ¶ 28.  The

Debtor is acting in good faith in an effort to fully, equitably, and efficiently resolve Claims through the establishment of a trust in a chapter 11 plan. *See id.*

42. As to the second factor, an injunction is necessary to prevent irreparable harm to the Debtor and its estate for five reasons. *First*, absent the requested injunction, the prosecution of Allocated Claims or Indemnified Claims would result in losses to the Debtor's estate and, in turn, the Debtor's creditors as a whole. *See id* ¶ 29. The exact same Allocated Claims that exist against the Debtor in its chapter 11 case would be prosecuted through piecemeal litigation against the Non-Debtor Affiliates outside of this Court. *See id*. Indeed, certain of the Defendants have contended that the Debtor and the Non-Debtor Affiliates are a single entity and allege the same injuries using the same evidence in support of Allocated Claims under successor liability, alter ego, and joint and several liability theories even though the core allegations in such actions concern alleged acts of the Debtor prior to the Non-Debtor Affiliates' existence. *See id*.; *see also, e.g.*, *Hasty v. Tehum Care Services, Inc.*, Cause No. 2:22-cv-4054, Docket No. 73 (W.D. Mo. Dec. 6, 2022) ("As successors to Corizon Health Inc. and Corizon LLC, both Tehum and CHS TX, Inc. are equally liable for the liabilities of those entities and the damages caused by the injuries suffered by Plaintiff."). Accordingly, prosecution of the Allocated Claims would result in the liquidation of claims against the Debtor. *See id* ¶ 29. Similarly, the prosecution of Indemnified Claims would result in additional claims against the Debtor's estate for attorneys' fees, expenses, resulting judgments, and other indemnified costs. *See id* ¶ 30. Both scenarios could also potentially lead to discovery burdens on the Debtor and would certainly harm the Debtor's ability to confirm a chapter 11 plan that maximizes recovery and provides equitable treatment to the Debtor's creditors. *See id*; *see also, e.g., In re ACIS Cap. Mgmt., L.P.*, No. 18-03212-SGJ, Docket No. 21 (Bankr. N.D. Tex. Jul. 10, 2018) (granting injunction and finding that "[i]njunctive relief is necessary here to prevent

imminent and irreparable injury in the form of substantial losses to creditors and parties-in-interest"); *In re LTL Mgmt., LLC*, 638 B.R. 291, 307 (Bankr. D.N.J. 2022) (finding that an extension of the automatic stay to non-debtors was warranted where "continued litigation against the [p]rotected [p]arties would divert funds and resources toward defense costs and potentially disrupt the flow of funds and resources" towards debtor's estates).

43.     *Second*, permitting non-Debtors to assert the POE Claims—aside from violating the stay, as discussed above—will otherwise allow certain Defendants to benefit from causes of action at the expense of the Debtor's other creditors.  *See id* ¶ 31.  It is the Debtor who owns the POE Claims and should therefore exercise control over the same—which constitute its estate property—to garner value for its estate and its creditors as a whole, not third parties.  *See id*.

44.     *Third*, continued prosecution of the Claims would distract the Debtor's professionals and redirect time and resources away from the Debtor's efforts in its chapter 11 case, thereby potentially threatening the Debtor's ability to swiftly and efficiently resolve this chapter 11 case.  *See* Perry Decl. ¶ 32; *see also, e.g.*, *In re Ionosphere Clubs, Inc*., 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990) (enjoining non-debtors from continuing lawsuit "[b]ecause the suit would ultimately divert the debtor's resources and attention from the bankruptcy process.").

45.     *Fourth*, the resolution of Claims and issues in litigation against the Non-Debtor Indemnified Parties could bind the Debtor under various preclusion doctrines such as collateral estoppel and *res judicata*.  *See* Perry Decl. ¶ 33.  To avoid this risk, the Debtor would be compelled to actively participate in each of the hundreds of pending state and federal lawsuit to ensure that the Debtor's interests are adequately protected.  *See id*.  This would undermine the automatic stay and consume all of the Debtor's time and resources.  *See id*.

46.     *Finally*, for the foregoing reasons, prosecution of the Claims against the Non-Debtor Indemnified Parties would frustrate the purpose of the automatic stay—to provide debtors with a "breathing spell" to allow them to focus on the bankruptcy proceeding.  *See  id*. ¶ 34; *see also*, *e.g.*, *Commonwealth Oil Refining Co. v. EPA (In re Commonwealth Oil Ref. Co.)*, 805 F.2d 1175, 1182 (5th Cir. 1986).  Failure to issue an injunction could result in inconsistent results among tribunals which will likely, in turn, lead to differing recoveries among similarly situated claimants. *See* Perry Decl. ¶ 34.

47.     In contrast to the immediate and irreparable harm the Debtor and its estate would face if injunctive relief were denied, the only potential harm faced by the Defendants is delay. *See id.* ¶ 35.  Mere delay as a result of an injunction issued until bankruptcy proceedings are resolved is not a significant harm.  *In re Lazarus Burnam Assocs.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993).  Furthermore, as mentioned above, the Debtor's creditors, as a whole, are benefitted by the injunction requested in this Complaint.  *See* Perry Decl. ¶ 35.  Thus, the balance of equities weighs in the Debtor's favor.

48.     As to the fourth factor, public interest favors an injunction, which would enable the Debtor to maximize the value of its estate, focus on confirming a chapter 11 plan, and make every effort to ensure the most equitable and meaningful return possible to creditors.  This result is not feasible if piecemeal litigation of the Claims outside of this Court circumvents the bankruptcy process.

49.     Accordingly, an injunction barring the Defendants from prosecuting the Claims against the Non-Debtor Indemnified Parties until the earlier of (a) the confirmation of a chapter 11 plan, or (b)(i) conversion or (ii) dismissal of the Debtor's chapter 11 case is appropriate and essential to the orderly and effective administration of the Debtor's estate.  *See* Perry Decl. ¶ 37.

**Prayer for Relief**

WHEREFORE, the Debtor respectfully requests that this Court grant the following relief:

a.    declare that 11 U.S.C. § 362(a) prohibits the commencement or continuation of any action or proceeding by the Defendants to recover Allocated Claims against the Non-Debtor Affiliates;

b.    declare that 11 U.S.C. § 362(a) prohibits any act by the Defendants to assert POE Claims against the Non-Debtor Affiliates or Indemnified D&Os;

c.    extend the automatic stay under 11 U.S.C. § 105(a) and/or 362(a) to prohibit the commencement or continuation of any action by the Defendants against the Non-Debtor Indemnified Parties asserting Indemnified Claims;

d.    in the alternative, issue a preliminary injunction under 11 U.S.C. § 105(a) and rule 7065 of the Federal Rules of Bankruptcy Procedure to enjoin the Defendants' prosecution of the Claims against the Non-Debtor Indemnified Parties unless and until a chapter 11 plan is confirmed in this chapter 11 case, or this chapter 11 case is converted or dismissed; and

e.    award all such other and further relief as the Court deems appropriate under the circumstances.

*[Remainder of page intentionally left blank]*

Respectfully submitted this 23rd day of March, 2023.

**GRAY REED**

By: _/s/ Jason S. Brookner_
     Jason S. Brookner
     Texas Bar No. 24033684
     Aaron M. Kaufman
     Texas Bar No. 24060067
     Lydia R. Webb
     Texas Bar No. 24083758
     Amber M. Carson
     Texas Bar No. 24075610
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone:    (713) 986-7127
Facsimile:    (713) 986-5966
Email:       jbrookner@grayreed.com
            akaufman@grayreed.com
            lwebb@grayreed.com
            acarson@grayreed.com

*Proposed Counsel to the Debtor*
*and Debtor in Possession*

## Appendix A

### List of Defendants and Addresses

| | |
|---|---|
| Michael Chapman #271129<br>Elmore Correctional Facility<br>3520 Marion Spillway Road<br>Elmore, AL 36025 | Joshua Snider<br>Ionia Maximum Correctional Facility<br>1576 W. Bluewater Highway<br>Ionia, MI 48846 |
| Angela Branum & Estate of Justin Branum<br>c/o Joy Bertrand<br>PO Box 2734<br>Scottsdale, AZ 85252 | Raynard D. Coleman #243482<br>Macomb Correctional Facility<br>34625 26 Mile Rd,<br>New Haven MI 48048 |
| Christopher J. Brightly #296229<br>ASPC Eyman<br>PO Box 3500<br>Florence, AZ 85132l | Kerrie Milkiewicz<br>Personal Representative of the Estate of Milkiewicz<br>1300 Yorkstown Dr.<br>Flint, MI 48532 |
| Mark L. Stewart #203381<br>ASPC-E South Unit<br>PO Box 3400<br>Florence, AZ 85132 | Kohchise Jackson<br>c/o: Larry Margolis<br>Margolis & Cross<br>214 South Main St., Ste 200<br>Ann Arbor, MI 48104 |
| Robert Gamez, Jr.<br>c/o Anne M. Voigts<br>601 S. California Ave., Ste 100<br>Palo Alto, CA 94304 | William Kelly<br>c/o: Larry Margolis<br>Margolis & Cross<br>214 South Main St., Ste 200<br>Ann Arbor, MI 48104 |
| Lee Michael Beitman # 290497<br>ASPC Florence - South Unit<br>PO Box 8400<br>Florence, AZ 85132 | Edward Albert Stenberg #124629<br>Lakeland Correctional Facility<br>141 First St.<br>Coldwater, MI 49036 |
| Jonathan Arther<br>c/o Angel Raymond<br>44400 W. Honeycutt Rd., Ste 110<br>Maricopa, AZ 85138 | Cameron Regional Medical Center, Inc.<br>Registered Agent: Joseph F. Abrutz, Jr.<br>1600 East Evergreen St.<br>P.O. Box 557<br>Cameron, MO 64429 |
| Jennifer Power for Estate of Monnie Washburn<br>c/o Anne Findling<br>301 E. Bethany Home Rd., Ste B-100<br>Phoenix, AZ 85012 | Capital Region Medical Center / Curators of the University of MO<br>Registered Agent: Gaspare Calvaruso<br>1125 South Madison St.<br>Jefferson City, MO 65101 |
| Andre Dennison #143931<br>ASPC Florence - Cook Unit<br>PO Box 3200<br>Florence, AZ 85132 | Capitol Eye Care, Inc. / Capitol Eye Care<br>Registered Agent: Bert Doerhoff, CPA<br>1301 Southwest Blvd.<br>Jefferson City, MO 65109 |

| | |
|---|---|
| Laura L. Medley<br>P.O. Box 490<br>Mesa, AZ 85211 | Jefferson City Oral and Maxillofacial Surgery, LLC<br>Registered Agent: Dale Seibeneck<br>520 Dix Road<br>Jefferson City, MO 65109 |
| Waheed Nelson<br>c/o James V. Cook<br>Law Office of James Cook<br>314 Jefferson St.<br>Tallahassee, FL 32301 | CMMP Surgical Center, LLC<br>Registered Agent: Angela Erosenko<br>1705 Christy Drive, Suite 100<br>Jefferson City, MO 65101 |
| Adree Edmo<br>c/o Mary Elizabeth Heard<br>M.E. Heard, Attorney, PLLC<br>100 NE Loop 410, Ste. 605<br>San Antonio, Texas 78216 | Mid-Missouri Anesthesia Consultants, P.C.<br>Registered Agent: Robin Michitsch<br>3349 American Avenue, Suite C<br>Jefferson City, MO 65109 |
| Andrew Wolf #35408<br>Idaho State Correctional Center<br>PO Box 70010<br>Boise, ID 83707 | Isaac Bernstein<br>c/o Thomas SanFilippo<br>211 N. Broadway, Ste 2323<br>St. Louis, MO 63102 |
| Camron Belcher #91436<br>Idaho Maximum Security Institute<br>J-Block<br>PO Box 51<br>Boise, ID 83707 | Phillip Buchanan #1257509<br>Algoa Correctional Center<br>8501 No More Victims Rd.<br>Jefferson City, MO 65101 |
| Jeremy Wilkinson #47239<br>Idaho State Correctional Center<br>D-Block<br>P.O. Box 70010<br>Boise, ID 83707 | Wilber Hasty #302470<br>Missouri Depart of Corrections –<br>District 16 Probation and Parole<br>311 Travis Blvd.<br>Troy, MO 63379 |
| Noah Schroder #72050<br>Treasure Valley Community Reentry Center<br>PO Box 8509<br>Boise, ID 83707 | K.A., S.A., L.R., L.J., and Jane Does 1-25<br>c/o Philip Hines<br>Held & Hines, LLP<br>2004 Ralph Ave<br>Brooklyn, NY 11234 |
| St. Alphonsus<br>Registered Agent: CT Corporation System,<br>1555 W. Shoreline Dr., Suite 100<br>Boise, ID 83702 | Leona Miotke<br>20804 Butteville Road NE<br>Aurora, OR 97002 |
| St. Luke's Health System, Ltd.<br>St. Luke's Regional Medical Center, Ltd.<br>Registered Agent: Christine Neuhoff<br>815 E. Park Blvd.<br>Boise, ID 83712 | James Hyman<br>755 Westover Road<br>Stamford, CT 06902 |
| Halo Branded Solutions<br>Registered Agent: CT Corporation System,<br>208 So Lasalle St., Suite 814<br>Chicago, IL 60604 | Maxim Healthcare Staffing Services, Inc.<br>Registered Agent: CSC-Lawyers Incorporating Serv.<br>7 St. Paul Street, Suite 820<br>Baltimore, MD 21202 |