# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| Tehum Care Services, Inc., ) | |
| ) | Case No. 23-90086 (CML) |
| Debtor. ) | |
| | |
| Tehum Care Services, Inc., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | ADVERSARY NO. 23-03049 |
| ) | |
| Those Parties Listed in Appendix A, ) | |
| ) | |
| Defendants. ) | |

**OBJECTION OF KOHCHISE JACKSON AND WILLIAM KELLY TO DEBTOR'S MOTION FOR AN ORDER (I)(A) DECLARING THAT THE AUTOMATIC STAY APPLIES TO CERTAIN CLAIMS AND CAUSES OF ACTION ASSERTED AGAINST CERTAIN NON-DEBTORS AND (B) EXTENDING THE AUTOMATIC STAY TO CERTAIN NON-DEBTORS, OR IN THE ALTERNATIVE, (II) PRELIMINARILY ENJOINING SUCH ACTIONS (DOCKET NO. 2).**

1

# INDEX OF EXHIBITS

**Exhibit 1:** *Debtor's Emergency Motion for an Extension of Time to Respond to William Kelly's Motion for an Order of Substitution, July 28, 2022*

BACKGROUND AND PRELIMINARY STATEMENT

1. In its Motion, the Debtor seeks to enjoin the continued litigation of a broad array of claims against various non-Debtors, including CHS TX, Inc., the entity that received the Debtor's assets in its May 2022 divisional merger. The Debtor claims that continued prosecution of actions against CHS TX and its former clients will "will produce inequitable results, rewarding the winners in the proverbial "race to the courthouse" and disadvantaging all other creditors." (Mot. ¶ 1).

2. But the Debtor is not attempting to prevent a 'race to the courthouse' via this adversary proceeding. Instead, it is trying to enforce its choice of the winners. In its Plan of Divisional Merger, the Debtor allocated one hundred and sixty tort claims, constituting approximately 25% of its then-pending tort claims, to the "NewCo," CHS TX. (Main Case ECF 59-10, pp. 147-151). Just like the approximately four hundred and seventy five RemainCo tort claims that the Debtor seeks to quarantine in this bankruptcy, these NewCo tort claims "concern alleged acts of the Debtor prior to the [NewCo's] existence." (Mot. ¶ 68).

3. The one hundred and sixty tort claims that the Debtor placed in the NewCo bucket are even covered by the same insurance policies that are purportedly applicable to the RemainCo tort claims. For example, Policy #4-53688 covers thirty-eight tort claims assigned to the NewCo (Main Case ECF 59-10, pg. 149), and twenty-eight tort claims

assigned to the RemainCo (Main Case ECF 59-10, pp. 156, 159). And while the RemainCo tort claimants' cases remain stayed, the NewCo tort claimants are currently free to forge ahead with their litigation and capture any available proceeds of the Debtor's insurance policies.[1] Whatever the goals of the Debtor's 'Texas-Two-Step' divisional-merger-and-bankruptcy scheme may be, an equitable distribution of the Corizon assets among the Corizon tort claimants is not among them.

4.  Adversary Defendants Kochise Jackson and William Kelly have already litigated the issue of whether they, too, can pursue CHS TX for the pre-divisional-merger tort claims they hold, notwithstanding the Debtor's unilateral decision to place their claims in the "RemainCo" bucket. Mr. Kelly and Mr. Jackson brought medical malpractice and civil rights claims against the Debtor in 2019 and in early 2022, prior to the Debtor's divisional merger. On July 20, 2022 and July 26, 2022, less than three months after the Debtor shifted substantially all of its assets to CHS TX, Inc., Mr. Jackson and Mr. Kelly filed motions to substitute CHS TX, Inc. and YesCare Corp. as defendants in place of the Debtor in their respective pending cases.

---

1 Coverage is unlikely to be available under most of these policies in any event, because the relevant professional liability policies include self-insured retentions that are many times larger than the available coverage. (*See* Main Case ECF No. 332, pg. 30). The Debtor has no ability to satisfy these SIRs: it has no cash, no funds available under the M2 LoanCo funding agreement, and no assets other than "potential estate causes of action, tax refunds and similar receivables." (*See* Main Case ECF No. 186, pg. 30, ¶ 14).

5.      The Debtor moved on an emergency basis for additional time to respond to the Kelly and Jackson motions. (*See* **Ex. 1:** Emergency Motion for Extension of Time). The court granted the Debtor additional time to respond. The Debtor then filed responses in opposition to the Kelly and Jackson motions on August 17, 2022.

6.      On November 1, 2022, Mr. Jackson and Mr. Kelly's Rule 25(c) motions were granted in part and denied in part. CHS TX, Inc., but not Yescare Corp., was added as a defendant in each case. Jackson and Kelly also prevailed on the hotly-contested choice-of-law issue: the magistrate judge to whom the motions were referred determined that Michigan law, rather than Texas law, applied to the successor-liability question with respect to tort claims arising from the Debtor's conduct in Michigan prior to its reincorporation in Texas in April of 2022. *Kelly v. Corizon Health. Inc.,* 2022 U.S. Dist. LEXIS 198725 at *11-*22 (E.D. Mich. 2022); *Jackson v. Corizon Health, Inc.*, 2022 U.S. Dist. LEXIS 198717 at *11-*23 (E.D. Mich. 2022). The Debtor did not file objections to the magistrate judge's orders within the time provided by Fed. R. Civ. P. 72(a) and E.D. Mich. L.R. 72.1(d).

7.      In this adversary proceeding, the Debtor now seeks a second bite at the apple, proffering additional arguments with respect to whether Texas law or Michigan law applies to Mr. Kelly's and Mr. Jackson's successor-liability claims arising from the Debtor's May 2022 transaction with itself. (Mot. ¶ 44). As this choice-of-law issue was

already decided against the Debtor in two prior judicial proceedings in which the Debtor and these tort claimants were parties, the Debtor is barred from re-litigating the same issue in bankruptcy court. *See B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 147 (2015); *Twin City Pipe Trades Serv. Ass'n v. Wenner Quality Servs.*, 869 F.3d 672, 677 (8th Cir. 2017).

8. Even if the Debtor was not barred by the doctrine of issue preclusion from re-litigating the choice-of-law question with respect to Mr. Kelly and Mr. Jackson, its position is wrong on the merits. The "internal-affairs doctrine," on which the Debtor relies, does not control choice-of-law issues involving successor-liability and alter-ego claims brought by third-party creditors. *See First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 621 (1983) ("[t]o give conclusive effect to the law of the chartering state in determining whether the separate juridical status of its instrumentality should be respected would permit the state to violate with impunity the rights of third parties"); *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1102 (E.D. Mich. 1997) ("[T]he terms of [Restatement of Conflicts] § 302 do not mandate the law of the state of incorporation in this case, where the matter is not one of internal corporate governance but rather external liability"); *Ward v. Auerbach*, 2017 U.S. Dist. LEXIS 97147 at *16 (D. Mass. 2017) ("successor liability . . . is not an issue of internal corporate affairs. . . . [B]ecause this is a personal injury case, the law of the state where

6

the plaintiff is domiciled should apply, as that state has a greater interest in the litigation than the state where the corporate defendant is incorporated").

9. The Debtor also argues that successor liability is generally not recognized under Texas law. (Mot. ¶ 44). The debtor is correct on that point, and that is precisely the reason that Mr. Kelly's and Mr. Jackson's successor-liability claims are not property of the Debtor's estate. Under § 541(a)(1), "[t]he property of the estate thus consists of '[w]hatever rights a debtor has in property at the commencement of the case . . . [,] no more, no less." *Giron v. Zeytuna, Inc.*, 597 F.Supp. 3d 29, 43 (D.D.C. 2022) (quoting *Moody v. Amocco Oil*, 734 F.2d 1200, 1213 (7th Cir. 1984)). Causes of action can be estate property, and "[w]hether a particular cause of action is available to the debtor, and thus constitutes "property of the estate," is determined by state law." *Spartan Tube & Steel v. Himmelspach (In re RCS Engineered Products Co.)*, 102 F.3d 223, 225 (6th Cir. 1996).

10. If the Debtor *itself* could not have asserted a given claim on the petition date under applicable state law, that claim was not the debtor's property, and therefore cannot be property of the bankruptcy estate under § 541(a)(1). *See Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 586 (5th Cir. 2008); *Harch Hyperbarics, Inc. v. Martinucci*, 2011 U.S. Dist. LEXIS 60314 at *7-

*9 (E.D. La. 2011); *Spartan Tube & Steel*, 102 F.3d at 227. That is the case with respect to the Kelly and Jackson successor-liability claims against CHS TX, Inc.

### I. The Debtor is barred by the doctrine of issue preclusion from re-litigating in bankruptcy court whether Texas law or Michigan law applies to Kochise Jackson and William Kelly's successor-liability claims against CHS TX, Inc.

11.  Mr. Kelly and Mr. Jackson's claims against the Debtor are § 1983 civil rights claims, pending in a federal district court under federal-question jurisdiction. The rules of claim preclusion and issue preclusion in federal-question cases are governed by federal common law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). It is a "fundamental precept of common-law adjudication . . . that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties[.]" *Montana v. United States*, 440 U.S. 147, 153 (1979) (internal citation omitted).

12.  For issue preclusion to attach, the first proceeding does not need to be a lawsuit, and the adjudicative body does not even need to be a court. *See B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 148 (2015). Issue preclusion applies whenever an issue was actually decided in a prior proceeding, the party had a full and fair opportunity to litigate it, and determination of the issue was necessary to the adjudicator's decision. *See ETC Sunoco Holdings, L.L.C. v. United States*, 36 F.4th 646, 648 (5th Cir. 2022).

13. While the ability to appeal an adverse finding is typically a component of a full and fair opportunity to litigate, a party's failure to pursue its appellate rights in the initial proceeding will generally preclude that party from re-litigating the same issue in another forum. "Ordinary preclusion law teaches that if a party to a court proceeding does not challenge an adverse decision, that decision can have preclusive effect in other cases, even if it would have been reviewed *de novo*." *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 148 (2015).

14. This adversary proceeding is a subsequent suit between the same parties. *See Kelly v. Corizon Health, Inc.*, 2022 U.S. Dist. LEXIS 198725 at *36 ("[a]s Tehum, YesCare, and CHS TX concede, the Corizon that entered this lawsuit is the same entity as the Corizon that came out of the divisional merger . . . the Corizon listed in the docket (now going by the name Tehum) is the same entity as the Corizon which Kelly originally brought this lawsuit against."). The issue of whether Michigan law or Texas law applies to Mr. Kelly and Mr. Jackson's successor-liability claims was vigorously litigated and actually decided in the prior proceedings, *Kelly v. Corizon Health. Inc.*, 2022 U.S. Dist. LEXIS 198725 at *11-*22 (E.D. Mich. 2022); *Jackson v. Corizon Health, Inc.*, 2022 U.S. Dist. LEXIS 198717 at *11-*23 (E.D. Mich. 2022), and the magistrate judge's determination of the choice-of-law issue was actually necessary to decide the motions.

15.     The Debtor had a full and fair opportunity to litigate the choice-of-law issue in the prior proceedings. The Debtor filed an emergency motion for additional time to respond to the *Kelly* and *Jackson* motions to substitute the Debtor for CHS TX and Yescare, (**Ex. 1**), which Kelly and Jackson opposed. But the court granted in part the Debtor's motion for an extended briefing schedule. After the adverse orders were entered, the Debtor could have sought district court review of the magistrate judge's orders disposing of the motions. It did not. By failing to file objections to the orders within the time prescribed by Fed. R. Civ. P. 72(a), the Debtor "waived its right to appeal this issue." *Superior Prod. P'Ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 321 (6th Cir. 2015).

16.     The Debtor may argue that CHS TX' unresolved objections to the magistrate judge's orders preserve the Debtor's right to re-litigate the choice-of-law question in this forum. But a party may not escape the issue-preclusive effect of an adverse judicial decision when that party itself prevented the decision from becoming final and truncated the appellate-review process through its own act of filing a voluntary bankruptcy petition. *See Twin City Pipe Trades Serv. Ass'n. v. Wenner Quality Servs.*, 869 F.3d 672, 677 (8th Cir. 2017).

### II. William Kelly and Kohchise Jackson's successor-liability claims against CHS TX, Inc. are not property of the estate under § 541(a)(1)

17.     In addition to arguing that Mr. Kelly's and Mr. Jackson's pending successor-liability claims against CHS TX, Inc. are not viable causes of action, (Mot. ¶¶ 44-45),

10

the Debtor argues that these allegedly-invalid claims are property of its estate under § 541(a)(1). (Mot. ¶ 45). The Debtor is mistaken; the Michigan-law-based successor liability claims against CHS TX belong solely to the Michigan personal-injury claimants. Unlike alter-ego or fraudulent-transfer claims, these claims do not allege injury to the Debtor, do not stem from the depletion of estate assets, and, most importantly, could not have been asserted by the Debtor itself on the petition date.

18. "Whether the bankruptcy estate or a creditor can pursue a claim against third parties is a recurring issue in bankruptcy law." *Meridian Capital CIS Fund v. Burton (In re Buccaneer Res., L.L.C.)*, 912 F.3d 291, 293 (5th Cir. 2019). "Whether a particular state-law claim belongs to the bankruptcy estate **depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case.**" *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008) (citing *Schertz-Cibolo-Universal City v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. 1994)) (emphasis added). The source of this rule is the text of 11 U.S.C. § 541(a)(1), which defines the bankruptcy estate as "all legal or equitable interests of the debtor in property at the commencement of the case." *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1149 (5th Cir. 1987).

19. In conducting the property-of-the-estate analysis for a given cause of action, courts often consider whether the claim alleges a harm to the debtor. *See, e.g., In re Educators Group Health Trust,* 25 F.3d at 1284 (5th Cir. 1994). If the claim does not involve any harm to the debtor, the debtor would have lacked standing to raise the claim itself at the time of its bankruptcy filing; the claim therefore cannot be estate property under § 541(a)(1). *See Burton (In re Buccaneer Res., L.L.C.),* 912 F.3d 291, 293 (5th Cir. 2019) (explaining that no-harm-to-the-debtor claims represent "the simple case" where the claim "cannot be part of the estate.")

20. But a finding that the claim alleges harm to the debtor does not mean the claim is necessarily estate property. Even where a claim alleges an injury to the debtor, the estate only owns the claim if a second condition is satisfied: "the debtor otherwise could have brought a cause of action under Texas law for its direct injury as of the commencement of the case." *In re Educators Group Health Trust,* 25 F.3d at 1285 n.2 (5th Cir. 1994); *see also, Giron v. Zeytuna, Inc.,* 597 F.Supp. 3d 29, 46 (D.D.C. 2022). As a result, it is possible for groups of creditors and the estate to simultaneously hold separate claims, against the same defendant, for essentially the same wrongful conduct. *See Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 585 (5th Cir. 2008).

21.     For example, the Fifth Circuit found in *In re S.I Acquisition, Inc.,* 817 F.2d 1142 (5th Cir. 1987) that a Texas law alter-ego claim was bankruptcy-estate property. The panel held that, "[o]f most importance to our decision, however, is whether a corporation could assert an action against itself based upon alter ego." *In re S.I Acquisition, Inc.,* 817 F.2d at 1152. Since Texas law alter-ego claims require "misuse[] of the corporation" by a control entity, and "theoretically nothing in Texas law prohibits a corporation from asserting on its own an action based on alter ego," the panel held that this cause of action, for a Texas corporation, "is "property of the estate" within the meaning of section 541(a)(1)." *Id.* at 1153.

22.     But *S.I Acquisition* does not establish a general bankruptcy-law rule that alter-ego claims are always estate property. Identical alter-ego claims are not property of the bankruptcy estate when the corporate debtor happens to be located in a state whose law would not have allowed that debtor to assert its own action based on alter-ego on the petition date. *See, e.g. Spartan Tube & Steel v. Himmelspach (In re RCS Engineered Products Co.),* 102 F.3d 223, 227 (6th Cir. 1996) (holding that "[s]ince a subsidiary may not bring an alter ego claim against its parent company under Michigan law, the claim does not become the property of the estate under § 541(a)(1) of the Bankruptcy Code when the subsidiary files a petition for bankruptcy"); *See also, In re Ozark Restaurant Equipment Co.,* 816 F.2d 1222, 1225-26 & n.7 (8th Cir. 1987) (same, applying Arkansas

13

law); *In re Cincom iOutsource, Inc.,* 398 B.R. 223, 232 (Bankr. S.D. Ohio 2008) (same, applying Ohio law) *Giron v. Zeytuna, Inc.,* 597 F.Supp. 3d 29, 46 (D.D.C. 2022) (same, District of Columbia law). In other words, the difference in outcome between *S.I. Acquisition* and *Spartan Tube & Steel* does not represent a circuit-split. It is instead a natural consequence of the fact that whether a given cause of action constitutes estate property for a given debtor under § 541(a)(1) depends on state law, and Michigan law and Texas law are different.

23. Just as a Michigan subsidiary corporation may not assert an alter-ego claim against its parent, Texas law explicitly prohibits Texas corporations from asserting successor-liability claims against entities that acquire their assets. *See McKee v. American Transfer & Storage,* 946 F. Supp. 485, 487 (N.D. Tex. 1996) (finding that "Texas law does not generally recognize successor liability . . . [t]he Texas Business & Corporations Act eliminates the doctrine of implied successor liability"). The Debtor, a Texas corporation at the time of the commencement of the bankruptcy case, thus could not have brought a successor-liability claim against CHS TX, Inc., another Texas corporation, under applicable state law. For this reason alone, any successor liability claims against CHS TX, Inc. are not estate property. *See Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 586 (5th Cir. 2008).

14

24. The Michigan personal-injury claimants' successor-liability claims also could not have been asserted by the debtor at the commencement of the bankruptcy case for another reason: they do "not depend on any harm to the debtor." *Meridian Capital CIS Fund v. Burton, (In re Buccanneer Res., L.L.C.)*, 912 F.3d 291, 294 (5th Cir. 2019). Michigan imposes successor liability on asset purchasers even when fair value was paid for the assets, and no injury has been inflicted on the predecessor corporation. *See, e.g. Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 411 (1976) (holding arms-length purchaser of corporation's assets liable for injury sustained by Michigan resident on machine previously manufactured by asset-seller corporation, where both corporations were New York entities); *Ryan Racing v. Gentilozzi*, 231 F. Supp. 3d 269, 285, 289 (W.D. Mich. 2017) (imposing successor liability under Michigan law on entity that continued predecessor's auto-racing activities, despite "no evidence that RSR gave less than reasonably equivalent value for the assets it purchased."). Michigan recognizes the "mere continuation" doctrine of successor liability, which "simply asks whether a successor corporation is the reincarnation of its predecessor—and a successor corporation can be a continuation of its predecessor even if the predecessor corporation continues to exist with just enough assets to satisfy its liabilities." *Kelly v. Corizon Health*, 2022 U.S. Dist. LEXIS 198725 at *33 n.9 (E.D. Mich. 2022). Imposition of successor liability under Michigan law requires no fraud, no fraudulent transfers, no

misuse of the corporate form, and most importantly, no injury to the predecessor corporation. The Debtor does not have standing to assert these claims, so they do not fall within the definition of estate property under § 541(a)(1).

### III. The Court should not stay litigation against CHS TX under § 105.

25. A stay under § 105 "will be granted or issued under the usual rules for the issuance of injunctions." *Matter of Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1188 (5th Cir. 1986). The usual rules for issuance of an injunction include, among other things, that the granting of the injunction will not disserve the public interest. *Matter of Zale Corp.*, 62 F.3d 746, 765 (5th Cir. 1995). Granting an injunction in this instance would indeed disserve the public interest.

26. CHS TX, a newly-created entity, appears to be owned and controlled by the same individuals who own and control the Debtor and the DIP lender. (*See* Main Case ECF No. 332 pp. 7-24). These individuals purchased the Debtor while it was insolvent, in order to profit by exploiting a quirk of Texas corporation law to defeat the absolute priority rule. (*See* Main Case ECF No. 332 pp. 24-27). Their justifications for their transaction fall apart under even minimal scrutiny.

27. CHS TX received substantially all of the Debtor's assets in the Debtor's May 2022 divisional-merger, while leaving behind most of the Debtor's unsecured liabilities in what has become an assetless shell. The Debtor claims that the transfer of its assets to

CHS TX benefited its creditors by relieving the Debtor of "nearly $100 million of senior secured debt obligations." (Mot. ¶ 17). But the Debtor's own exhibits show that at least some, and perhaps all, of these secured debt obligations were owed to an insider, M2 LoanCo. (Main Case ECF No. 59-10, pp. 185-194). The Debtor's exhibits also show that the credit agreement with M2 LoanCo was amended on September 30, 2021, and again on April 29, 2022, days before the divisional merger. (Main Case ECF No. 59-10, pg. 185). Some, or all, of the secured debt obligations that the Debtor (and now CHS TX) owe to M2 LoanCo may themselves constitute fraudulent transfers. We don't know, because the Debtor still has not produced any schedules or SOFAs.

28. Even if the secured debt obligations that CHS TX assumed from the Debtor were bona-fide, arms-length debt obligations (they likely were not), even if the value of the Debtor's pre-divisional-merger assets was lower than $100 million, such that unsecured creditors would have received nothing in a non-divisional-merger bankruptcy case (the available evidence suggests that the assets were worth approximately $173 million, *see* Main Case ECF No. 332-9, pg. 35), and even if the Debtor had not already dissipated the entire $15 million "funding commitment" it supposedly earmarked for its unsecured creditors before it filed its Chapter 11 petition (it did, *see* Main Case ECF No. 186, pg. 6, ¶ 14), this divisional-merger-and-DebtCo-bankruptcy scheme would still, in the words of the Debtor, "oppugn the very equitable foundation on which bankruptcy is built."

(Mot. ¶ 70). Equityholders may not reorganize an insolvent company by imposing a unilateral, cram-down settlement on a subset of the company's unsecured creditors, while retaining for themselves an interest in the reorganized entity without needing to bid against other potential buyers for that interest. Congress categorically prohibited such an outcome in a bankruptcy proceeding; it is a per-se violation of the absolute priority rule. *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. Lasalle St. P'ship*, 526 U.S. 434, 437 (1999).

29.     The public interest would not be served by permitting the sponsors of this scheme to profit from it. If they profit, by settling (or buying) the causes of action against their new entities for less than the value of the assets they looted from the Debtor, they will do it again. Where insiders that control a Chapter 11 debtor have manufactured the relationship that forms the basis for their effort to benefit from the automatic stay by "executing a funding agreement and indemnity agreement" between entities under common control, in which the indemnitor entity is saddled with massive liabilities and placed into bankruptcy, while the indemnitee entity receives all of the major assets of the business, the indemnitee entity should not be permitted to benefit from the automatic stay.[2] *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2022 U.S. Dist. LEXIS

---

2   Only one circuit to date has ruled on this divisional-merger-plus-indemnification-and-funding-agreement strategy for sequestering creditors in a Chapter 11 proceeding and benefiting from the automatic stay while continuing to operate the productive assets of a company outside of bankruptcy. The Third Circuit recently dismissed that case as a bad-faith filing. *See LTL Mgmt.. LLC v. Those Parties Listed on Appendix A to*

230132 at *9-*10 (N.D. Fl. Dec. 22, 2022); *see also, 3M Occupational Safety LLC v. Those Parties Listed on Appendix A to the Complaint (In re Aearo Techs. LLC)*, 642 B.R. 891, 910-11 (S.D. Ill. 2022). Extending the stay to the sponsors of such a scheme permits them to "reap all of the benefits of bankruptcy with none of the attendant burdens." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2022 U.S. Dist. LEXIS 230132 at *10. If CHS TX and Yescare wish to benefit from the debtor protections of Chapter 11, they should themselves "pay the price of admission to an Article I forum – here, reorganization and submission to the oversight of a bankruptcy court." *Id.* at *9.

## CONCLUSION

For all the foregoing reasons, the Debtor's Motion should be denied.

/s/ *Ian T. Cross*
Ian T. Cross (P83367)
Attorney for Adversary
Defendants Kohchise Jackson
and William Kelly
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
ian@lawinannarbor.com

---

*Complaint (In re LTL Mgmt LLC)*, __ F.4th __, 2023 U.S. App. LEXIS 2323 at *49 (3rd Cir. Jan. 30, 2023).